302 F.2d 477
 Josephine A. ST. CLAIR, as Executrix of the Estate of Harold
W. St. Clair, Deceased, Plaintiff-Appellant and
Cross-Appellee,
v.
EASTERN AIR LINES, INC., Defendant-Appellee and Cross-Appellant.
Josephine A. ST. CLAIR, as Executrix of the Estate of Harold
W. St. Clair, Deceased, Plaintiff-Appellant,
v.
EASTERN AIR LINES, INC., Defendant-Appellee.
Josephine A. ST. CLAIR, as Executrix of the Estate of Harold
W. St. Clair, Deceased, Plaintiff-Appellant,
v.
UNITED STATES of America, Defendant-Appellee.
 Nos. 181, 182, Dockets 27118, 27119.
 United States Court of Appeals Second Circuit.
 Argued Jan. 16, 1962.
Decided April 24, 1962.
 
 David A. Ticktin, New York City (Powers, Kaplan & Berger, New York City, on the brief), for plaintiff-Appellant.
 Harold V. McCoy, New York City (Bigham, Englar, Jones & Houston, John G. Reilly and Robert F. Ewald, New York City, of counsel, on the brief), for defendant-appellee, Eastern Air Lines Inc.
 Anthony H. Atlas, Asst. U.S. Atty. for Southern Dist. of New York, for defendant-appellee, United States.
 Before MEDINA, MOORE and SMITH, Circuit Judges.
 MOORE, Circuit Judge.
 
 
 1
 Harold W. St. Clair died on November 1, 1949, when the Eastern Air Lines plane in which he was a passenger collided in mid-air over Washington, D.C., with a Bolivian P-38 military aircraft. Josephine St. Clair, as executrix of her deceased husband's estate, brought separate suits for wrongful death against the United States and Eastern Air Lines, Inc. (Eastern), in the United States District Court for the Southern District of New York. By a stipulation approved by the district court in December, 1952, the parties to these actions agreed that the issues of situs of the collision and liability of the defendants would be determined in certain test cases then pending in the United States District Court for the District of Columbia.[1] These cases established that the collision was the result of the concurrent negligence of Eastern's flight crew and employees of the United States in the control tower at Washington National Airport, and that the liability of Eastern is governed by the wrongful death statute of the District of Columbia (D.C.Code 1961, 16-1201, et seq.) but the liability of the United States is governed by the Virginia death act.[2] The only question that remained to be tried in the suits by the St. Clair estate was the amount of damages to which the estate was entitled.
 
 
 2
 The suit against the United States was tried to the court without a jury and resulted in a judgment against the United States for $15,000, the maximum amount recoverable under the Virginia Wrongful Death Act, Va.Code of 1942, ch. 236, 5787. The first trial in the suit against Eastern resulted in a judgment of $24,000 which this court set aside on an appeal by the plaintiff. 2 Cir., 279 F.2d 119 (1960). A new trial to the court and a jury resulted in a judgment of $65,113.43 for the estate. No appeal was taken from this judgment.
 
 
 3
 The appeals before us are from three orders of the district court entered on motions made subsequent to the entry of judgment.
 
 
 4
 The first motion was made by Eastern and sought to have the judgment against Eastern unconditionally reduced by $15,000, which amount had been paid by the United States into the registry of the court in satisfaction of the judgment in the suit by the estate against the United States. The order of the district court did not unconditionally reduce the judgment, but it did provide that on the issuance of execution Eastern should be credited with any amount paid to and received by plaintiff on the judgment against the United States. Plaintiff appeals from so much of this order as requires the crediting of payments received from the United States against the judgment against Eastern. Eastern cross-appeals from the refusal of the district court unconditionally to reduce the judgment against it.
 
 
 5
 The second motion was made by plaintiff to correct the judgment so as to include interest thereon from November 1, 1949, the date of decedent's death. The order of the district court denied this motion and plaintiff appeals therefrom.
 
 
 6
 The third motion, brought on by an order to show cause, was made by Eastern and sought either (1) an order compelling plaintiff to execute a satisfaction in exchange for payment by Eastern of the $65,113.43 judgment plus costs and directing the clerk to pay to Eastern the $15,000 deposited by the United States, or (2) an order permitting Eastern to pay the amount of the judgment plus costs into court and expressly providing that any order allowing plaintiff to withdraw the amount deposited by Eastern should also allow the United States to withdraw the $15,000 which it had previously deposited. The order of the district court allowed Eastern to pay the amount of the judgment plus costs into court and provided that plaintiff was only entitled to receive from Eastern and the United States collectively the total amount of the judgment against Eastern plus costs. Plaintiff appeals from that part of the order that limits the recovery of the estate to the amount of the judgment against Eastern plus costs.
 
 
 7
 The appeals by plaintiff raise two questions: (1) is plaintiff entitled to recover against Eastern and the United States collectively an amount greater than the amount of the judgment against Eastern plus costs; and (2) is plaintiff entitled to interest on the judgment against Eastern from the date of decedent's death rather than from the date of the judgment?
 
 
 8
 Plaintiff argues that the district court erred in holding that Eastern and the United States were joint-tort-feasors and that the total recovery against them must be limited to the amount of the larger of the two judgments. To the extent that the judgments represent compensation for the same injury, there can be no question that the plaintiff is only entitled to a single recovery. Parchefsky v. Kroll Brothers, Inc., 267 N.Y. 410, 196 N.E. 308, 98 A.L.R. 1387 (1935); 2 Harper & James, The Law of Torts 20.3 (1956). However, the Virginia Wrongful Death Act allows recovery for solatium, the pain and suffering caused the family by the death of the deceased, and for the loss of consortium, that is, the loss of the decedent's society, care and attention.[3] The District of Columbia Wrongful Death Act does not allow for these two items of damages.[4] Therefore, the question arises whether the recovery against the United States was for the same damages as was the judgment against Eastern. In the findings of facts and conclusions of law in the suit against the United States, the district court stated:
 
 
 9
 'No evidence was submitted by the plaintiff on the issue of grief and sorrow sustained by the widow and the child of the deceased. The attorney for plaintiff requested that I take judicial notice that grief and sorrow are sustained by said persons. Inasmuch as I have concluded that the pecuniary loss sustained by the widow and child exceeds the sum of $15,000, I shall not attempt to evaluate the grief and sorrow and I set no value upon this item of damages.'Since the trial court did not consider loss of consortium and solatium in computing plaintiff's damages, the court below hearing these motions was correct in holding that the judgments against the United States and Eastern were for the same damages and that plaintiff's recovery should be limited to the amount of the larger judgment. Cook v. United States, 2 Cir. 1960, 274 F.2d 689.
 
 
 10
 Plaintiff's claim for pre-judgment interest presents a question of the proper interpretation of New York law. Since jurisdiction in this suit, which was brought in the Southern District of New York, is based on diversity of citizenship, New York law applies in determining the rights of the parties, Erie R.R. Co. v. Tompkins, 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188 (1938); Klaxon Co. v. Stentor Electric Mfg. Co., 313 U.S. 487, 61 S.Ct. 1020, 85 L.Ed. 1477 (1941), including the right to interest on the judgment, Frasier v. Public Service Interstate Transp. Co., 2 Cir. 1958, 254 F.2d 132. Were it not for the recent decision of the New York Court of Appeals in Kilberg v. Northeast Airlines, Inc., 9 N.Y.2d 34, 211 N.Y.S.2d 133, 172 N.E.2d 526 (1961), there would be no doubt that plaintiff is not entitled to interest from the date of the injury, because the New York courts have consistently held that the question of whether interest is to be allowed on a judgment in a wrongful death action is controlled by the law of the place where the injury resulting in death occurred, Kiefer v. Grand Trunk R. Co., 12 App.Div. 28, 42 N.Y.S. 171, aff'd, 153 N.Y. 688, 48 N.E. 1105; Frounfelker v. Delaware, L. & W. R.R. Co., 73 App.Div. 350, 76 N.Y.S. 745; Colliton v. United Shipyards, Inc., 256 App.Div. 923, 9 N.Y.S.2d 784, aff'd, 281 N.Y. 582, 22 N.E.2d 161; Monkwall v. Turbine Engineering Corp., 276 App.Div. 866, 93 N.Y.S.2d 168, aff'd, 301 N.Y. 521, 93 N.E.2d 76; Wyman v. Pan American Airways, 181 Misc. 963, 43 N.Y.S.2d 420, aff'd, 267 App.Div. 947, 48 N.Y.S.2d 459, aff'd, 293 N.Y. 878, 59 N.E.2d 785, cert. denied, 324 U.S. 882, 65 S.Ct. 1029, 89 L.Ed. 1432. The District of Columbia allows interest only from the date of judgment, 28 D.C.Code, 2708. However, since the court in Kilberg said that it would treat the question of damages in a wrongful death action as procedural and apply New York law to that question, that decision must be examined to determine whether it overrules the prior decisions holding that questions of interest are to be determined by the law of the place of the injury, for under the local law of New York interest in a wrongful death action is awarded from the time of the death, New York Decedent Estate Law, McKinney's Consol.Laws, c. 13, 132.
 
 
 11
 In Kilberg, suit for wrongful death had been brought in New York by the estate of a New York resident who had died as a result of a plane crash in Massachusetts. The Massachusetts wrongful death statute (M.G.L.A. c. 229 1, 2) limited recovery in such an action to a maximum of $15,000. The New York Court of Appeals in a four-to-three decision stated that, since the Massachusetts limitation was contrary to the strong public policy of New York against limitations of recovery in wrongful death suits, which had been expressed in the New York Constitution since 1894, it would disregard the Massachusetts limitation and apply New York law to the question of damages. While the court did say that it would treat the question of damages as procedural, this language seems to be but a rationalization of the result necessitated by the determination to refuse, for reasons of public policy, to give effect to the limitation provision in the Massachusetts wrongful death statute rather than the enunciation of a rule of law to be applied in all analogous cases. Since the result in Kilberg rests on the strong public policy in New York against the limitation of recovery in wrongful death actions and there is no such strong public policy favoring the allowance of interest from the date of death, it does not follow that the New York Court of Appeals would extend the Kilberg decision to overrule the prior decisions applying the law of the place of the injury to the question of interest.
 
 
 12
 This conclusion is in agreement with the decision of the highest New York State court which thus far has considered the application of the Kilberg case to the question of interest in a wrongful death action. In Davenport v. Webb, 15 A.D.2d 42, 222 N.Y.S.2d 566, the court held that Kilberg did not change the prior rule that the question of any award of interest in a wrongful death action is to be determined by the law of the place where the injury occurred and not by New York law. This decision of an intermediate state court on a question of state law is binding on the federal courts in a diversity action unless there is persuasive evidence that the highest state court would reach a different conclusion. See Fidelity Union Trust Co. v. Field, 311 U.S. 169, 61 S.Ct. 176, 85 L.Ed. 109 (1940); Six Companies of California v. Joint Highway Dist. No. 13, 311 U.S. 180, 61 S.Ct. 186, 85 L.Ed. 114 (1940); West v. American Telephone & Telegraph Co., 311 U.S. 223, 61 S.Ct. 179, 85 L.Ed. 139 (1940); Strubbe v. Sonnenschein, 2 Cir., 299 F.2d 185. Since our conclusion as to the effect of the Kilberg case is identical with that of the Appellate Division in Davenport, we hold that plaintiff is only entitled to interest from the date of the judgment.
 
 
 13
 Insofar as Eastern appeals from the order of the district court refusing unconditionally to reduce the judgment against it by the sum of $15,000, we have been informed by counsel that an agreement has been reached between the United States and Eastern for contribution and, therefore, this appeal can be dismissed as moot. This decision is, of course, without prejudice to the rights of the United States and Eastern under that agreement.
 
 
 14
 The orders are affirmed.
 
 
 
 [1]
 See Union Trust Co. of District of Columbia v. United States, 113 F.Supp. 80, D.D.C.1953, modified Eastern Air Lines, Inc. v. Union Trust Co., 95 U.S.App.D.C. 189, 221 F.2d 62, defendant's appeal affirmed, 350 U.S. 907, 76 S.Ct. 192, 100 L.Ed. 796, plaintiffs' appeal cert. denied, 350 U.S. 911, 76 S.Ct. 192, 100 L.Ed. 799; Eastern Air Lines, Inc. v. Union Trust Co., 95 U.S.App.D.C. 189, 221 F.2d 62, reversed, 350 U.S. 907, 76 S.Ct. 192, 100 L.Ed. 796, modified and remanded on rehearing, 350 U.S. 962, 76 S.Ct. 429, 100 L.Ed. 835, on remand 99 U.S.App.D.C. 205, 239 F.2d 25, cert. denied, 353 U.S. 942, 77 S.Ct. 816, 1 L.Ed.2d 760
 
 
 [2]
 While this determination is binding on this court by reason of the stipulation of the parties, a recent Supreme Court case, Richards v. United States, 82 S.Ct. 585, indicates that the liability of the United States should have been determined to be governed by the wrongful death act of the District of Columbia
 
 
 [3]
 Matthews v. Hicks, 197 Va. 112, 87 S.E.2d 629 (1955)
 
 
 [4]
 Tate v. Nelson, 71 F.Supp. 465, 468, D.D.C.1947; Ciarrocchi v. James Kane Co., 116 F.Supp. 848, D.D.C.1953